## WARSHAUER v. LLOYD SABAUDO S. A.

District Court, S. D. New York.

Dec. 22, 1933.

Barron, Rice & Rockmore, of New York City (Bernard S. Barron and George P. Halperin, both of New York City, of counsel), for plaintiff.

Loomis, Williams & Donahue, of New York City (Homer L. Loomis and Thomas F. Peterson, Jr., both of New York City, of counsel), for defendant.

PATTERSON, District Judge.

The action is at law, brought by one Warshauer, a citizen of the United States, against the Lloyd Sabaudo, a corporation of Italy, and owner of the steamship Conte Biancamano. The complaint alleges that the plaintiff and a companion were in a small motorboat which was carried out to sea from the Long Island coast by forces beyond their control; that after drifting about for six days in a helpless condition they sighted the Conte Biancamano and made signals of distress which were observed by the operating personnel of the steamship; that the steamship could have stopped and taken them on board without running any risks; that it nevertheless ignored the signals and proceeded on its course without stopping; and that the plaintiff and his companion were left to shift for themselves until they were picked up two days later by another vessel. Damages are demanded for injuries and suffering by exposure, hunger, and thirst alleged to have resulted from the failure of the defendant's steamship to render assistance.

The defendant has moved to dismiss the complaint on the ground that it fails to state a cause of action. In its brief it denies that those on the Conte Biancamano saw the plaintiff or his boat, but for present purposes its position is that in any event the facts set forth by the plaintiff do not make out a case of legal liability against it.

The case seems to be one of first impression. The plaintiff has found no precedent for the action, one where liability is said to arise from the alleged refusal of a ship to come to the aid of a stranger in peril on the seas. He relies to some extent on section 2 of the Salvage Act of 1912 (46 USCA § 728), providing that the master of a vessel shall render aid to every person found at sea in danger of being lost, where he can do so without serious danger to his own vessel, and imposing punishment on a master who fails to give such assistance. On the other hand, the defendant has found dicta in early cases intimating that no civil action may be brought in a case of this character. Saunders v. The Hanover, Fed. Cas. No. 12,374; United States v. Knowles, Fed. Cas. No. 15,540. Most of the arguments in the case are directed to the general point whether any duty is imposed by law on a stranger to follow the example of the good Samaritan and render assistance to a person who is helpless and in peril. I find it unnecessary to pursue these arguments, interesting as they are, or to determine whether the Salvage Act can be construed as creating a civil as well as a criminal liability, for the reason that there are provisions in the International Salvage Treaty of 1910 which conclusively settle the rights of the parties now before the court.

The International Salvage Treaty, to which both the United States and Italy were parties, was signed on September 23, 1910. It was ratified by this country on March 14, 1912, and was declared effective on March 1, 1913. The text of the treaty will be found in 37 Statutes at Large, p. 1658. Article 11 provides:

"Every master is bound, so far as he can do so without serious danger to his vessel, her crew and passengers, to render assistance to everybody, even though an enemy, found at sea in danger of being lost.

"The owner of the vessel incurs no liability by reason of contravention of the foregoing provision."

This is a square declaration that, while the master of a ship is under a duty to rescue persons found in distress where he can do so without danger to his own ship, the owner of the ship incurs no liability if the master fails to discharge this duty.

434

The present case being one by a citizen of the United States against an Italian corporation, as owner of the steamship Conte Biancamano, the provisions of the treaty are controlling. See article 15. It follows that on the plaintiff's own showing he has no case against this defendant as owner of the steamship on account of the alleged failure by the master to pick him up. Whether he has a cause of action against the master, by virtue of the treaty or by virtue of the Salvage Act, is a matter that is foreign to the present issue. The defendant's motion to dismiss the complaint for failure to state a cause of action will accordingly be granted.